KEOSHA HENDERSON and
FELICIA CROSS,
on behalf of themselves and
all others similarly situated,

        Plaintiffs,

        v.                    Case No. 19-cv-1421

RUSS DARROW GROUP, INC.

        Defendant

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF FLSA CLASS COLLECTIVE SETTLEMENT

### INTRODUCTION

The Parties have filed a Joint Motion for Preliminary Approval ("Joint Motion") of the settlement reached between Named Plaintiffs, Keosha Henderson and Felicia Cross, the putative class collective, and Defendant, Russ Darrow Group, Inc. ("Defendant"). The Settlement Agreement & Release ("Settlement Agreement") provides for a total monetary settlement of $65,700.00. The Settlement Agreement is fair and reasonable, as it fully and adequately satisfies this Court's criteria for settlements of *bona fide* wage disputes. As such, the parties respectfully request that the Court approve the settlement, certify the Named Plaintiffs' proposed collective, and certify class counsel, Walcheske & Luzi, LLC ("Class Counsel"), and the named Plaintiffs, Keosha Henderson and Felicia Cross ("Plaintiffs" or the "Named Plaintiffs"), as representatives for the collective.

# STATEMENT OF FACTS

## I. PROCEDURAL HISTORY.

On September 30, 2019, Edwin Allen, brought the instant complaint in this matter, on behalf of himself and all other similarly situated hourly-paid, non-exempt Business Development Center ("BDC") employees of Defendant, alleging, *inter alia*, that Defendant failed to include all forms of non-discretionary remuneration in its BDC employees' regular rates of pay for overtime calculation purposes and improperly classified its BDC employees as "exempt" for compensation purposes, depriving said employees of overtime pay for hours worked in excess of forty (40) in a workweek in violation of both the Fair Labor Standards Act of 1938, as amended, ("FLSA"), and Wisconsin's Wage Payment and Collection Laws, Wis. Stat. § 103.001 et seq., Wis. Admin. Code § DWD 274.01 et seq., and Wis. Admin. Code § DWDF 272.001 et seq. ("WWPCL"). (ECF No. 1).

On December 16, 2019, Allen filed his Amended Complaint, joining as a party-plaintiff, Keosha Henderson. (ECF No. 13.) On January 29, 2020, this Court dismissed Allen as a Named Plaintiff and joined Felicia Cross as a party plaintiff. (ECF No. 14.) On that same date, Named Plaintiffs filed a Second-Amended Complaint in this matter. (ECF No. 25.)

Since that time, the Parties have thoroughly investigated the claims and conducted extensive written discovery. Following their respective investigations and information exchange, the Parties have engaged in good-faith settlement negotiations and have agreed on a collective-wide settlement that provides for a fair and just resolution of all claims.

## II. SETTLEMENT BACKGROUND.

Following initial investigation of the claims in the Second-Amended Complaint and conducting extensive written discovery. During discovery, Defendant disclosed payroll

documentation, documents pertaining to Defendant's policies, procedures, and compensation practices, as well as documentation relating to its award of non-discretionary bonuses and sales commissions. This information facilitated settlement.

Following discovery, the Parties stipulated to conditional certification. (ECF No. 27.) This Court approved the Parties' stipulation and authorized Class Counsel to serve court authorized notice to putative collective members. (ECF No. 28.) After completion of the notice period, the Parties agreed to attempt to resolve this case through direct settlement negotiations between their respective counsel.

Over the course of several weeks, the Parties: engaged in concentrated settlement discussions through their attorneys, including ongoing substantive discussions on the merits of Plaintiffs' claims and Defendant's defenses; conducted document and data review; and conducted damages calculations. All negotiations were held at arm's length. On June 12, 2020, the Parties reached an agreement in principle to settle the case for a total monetary amount of $65,700.00, the terms and conditions of which were memorialized in the Settlement Agreement, filed as **Exhibit 1**. The terms of the Settlement Agreement, stated briefly, are as follows:

– For settlement purposes only, the Parties agree to stipulate to the final certification of a FLSA collective.

– To recover under the FLSA collective, a putative collective member must have timely and validly completed and returned the Court's approved Consent Form and had a compensable claim for past due overtime wages under the FLSA ("Eligible Members"). Any opt-in plaintiffs who do not qualify as an Eligible Member shall have their claims dismissed without prejudice.

- Defendant shall establish a Gross Settlement Fund of $65,700.00;
    - From the Gross Settlement Fund, the eleven (11) Eligible Members of the FLSA Collective will share in an amount not to exceed $21,198.36;
    - Named Plaintiffs shall receive an amount not to exceed $2,500.00 each as a service award for their contributions to the FLSA Collective; and
    - Class Counsel shall receive an amount for attorneys' fees and costs not to exceed $39,501.64.
- Any settlement amounts allocated to Eligible Members that are not claimed (*e.g.* due to individuals failing to negotiate the settlement check within 120 days of issuance), shall revert to Defendant.

This settlement is fair and reasonable and was reached at arm's length and in recognition of the risks faced by all Parties. The settlement is structured to maximize payment to participating Eligible Members, as the parties have agreed to forego involving a Claims Administrator. The Class Notice and Consent Form previously supplied to the putative collective members, as approved by the Court, adequately informed them of their right to participate in the settlement, to exclude themselves from the settlement, and to object to the settlement, as well as the legal implications of each of these actions. Because the settlement is fair and was reached by the Parties at arm's length, the Parties jointly request that the Court grant preliminary approval of the settlement.

# ARGUMENT

## I.   APPROVAL OF SETTLEMENT IS APPROPRIATE.

### A.   The Criteria for Final Approval Have Been Satisfied.

Resolution of class action litigation by settlement is favored by the federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). An FLSA settlement requires court approval in order to be valid and enforceable. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). Employees can only bargain, waive, or modify their right to recovery if the parties agree to the terms of the settlement and the court approves the settlement as a fair and reasonable resolution of the *bona fide* dispute over FLSA provisions, and the settlement is entered as a stipulated judgment. *Lynn's Food Store, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir.1984). Therefore, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23, and courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. 679 F.2d 1350, 1353 n. 8. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353–54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354.

5

1. **The Proposed Settlement Is Fair, Reasonable, and Adequate.**

The Settlement Agreement outlined above is fair and reasonable for the parties. Real disputes exist between the parties as to whether liability exists in this case and, if liability were proven, the extent of the damages.

Further, the settlement provides all participating Eligible Members a substantial benefit in light of the risk of no recovery in this case. (Declaration of David M. Potteiger ("Potteiger Decl."), ¶ 13.) The amounts paid to each individual Eligible Member was determined by the Parties by first recalculating each opt-in plaintiff's actual past due overtime wages - *assuming Named Plaintiffs were successful in every aspect of the litigation*. (*Id.* at ¶ 13.) These calculations were made by applying approved methodologies adopted by the United States Department of Labor to Defendant's actual wage and timekeeping data. (*Id.*)

After further arm's length negotiation, the Parties agreed that there was substantial dispute as to whether the "willfulness" required for a third year could be established and whether the Defendant could establish the requisite "good faith" to avoid liquidated damages. (*Id.* at ¶ 14.) As an agreed resolution, the Parties included a proportionate amount for liquidated damages, and then reduced the total potential recovery by an amount commensurate with continued risk over a full three-year statutory period. (*Id.* at ¶ 13.) Beyond this, the settlement is structured to maximize payment to participating Eligible Members by foregoing involvement of a Claims Administrator and the costs inherently associated with a claims administration process.

2. **The Settlement Was Reached Through Extensive Arm's Length Negotiations.**

The Parties have divergent views regarding the Plaintiffs' assertions in their Second-Amended Complaint, but were able to work towards a compromise in this matter and did so at arm's length. (*Id.* at ¶ 16.)

### 3. The Settlement Fund Provides Adequate Relief for the Eligible Members and the Proposed Allocation Method Equitably Divides the Settlement Funds.

The allocation of the amount of the Net Settlement Fund that each Eligible Member will receive is based upon a representative recalculation of overtime allegedly owed as described above. (*Id.* at ¶ 13.) This is a substantial recovery and certainly a reasonable outcome considering the number of issues faced.

Named Plaintiffs recognized that the prospect of expeditious resolution outweighed the continued time, effort, expense, and risk of litigation for both parties, including the substantial and almost immediate prospect of additional and continued discovery, depositions, document review and production, retention of expert witnesses, and the filing of certification, de-certification, dispositive motions and potentially trial. (*Id.* at ¶ 14.)

Further, the time and investment in continued litigation would be substantial. The parties were preparing to embark on significant additional and continued discovery immediately before settlement that would have required significant investment from all parties and their counsel before dispositive motions and trial. Even if Named Plaintiffs were to prevail at trial, there is still the prospect that Defendant would appeal any number of the issues mentioned and only further delay any recovery for Named Plaintiffs and the Eligible Members. (*Id.*)

Last, it is significant that Defendant has agreed to dismiss those opt-in plaintiffs who do not qualify as Eligible Members. Despite the fact that these individuals were determined to not have potential damages in this case, Defendant has not demanded general releases from these individuals in exchange for their dismissal.

### 4. The Requested Service Payment Is Reasonable.

The Settlement Agreement provides that the Named Plaintiffs shall receive a service payment in recognition of their efforts as well as the benefit each Eligible Member derived from their individual efforts, particularly their extensive participation in the investigation leading up to the filing of the lawsuit as well as the discovery and settlement process. The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The Seventh Circuit has recognized that, in appropriate cases, class representatives may be entitled to incentive awards. *See Spicer v. Chi. Bd. Options Exch.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993) (citing *In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 571 (7th Cir. 1992)).

The amount of these service payments, $2,500.00 to each Named Plaintiff, is reasonable and well within the range of similar service payments granted by this Court. *See, e.g.*, *Slaaen, et al. v. Senior Lifestyle Corporation, et al.,* 18-cv-1562 (E.D. Wis. October 3, 2018) (Stadtmueller, J.); *Thomas Melzer v. Pro Label, Inc.,* Case No. 18-cv-1080, ECF No. 37 (E.D. Wis. January 23, 2020) (Griesbach, J.); *David Lee v. UL LLC,* Case No. 17-cv-1617, ECF No. 19 (E.D. Wis. November 25, 2019) (Griesbach, J.); *Nicholas Johnson v. National Technologies, Inc.*, No. 18-cv-462, ECF No. 57 (E.D. Wis., July 22, 2019) (Jones, J.); *John Weninger v. General Mills Operations, LLC*, Case No. 2018-cv-321, ECF No. 93 (E.D. Wis. April 18, 2019) (Stadtmueller, J.); and *Tracy Gerlach v. West Revenue Generation Services, et. al.*, Case No. 2018-cv-170, ECF No. 91 (E.D. Wis. January 3, 2019) (Griesbach, J.). Defendant does not oppose Named Plaintiffs' service payments. Further, Named Plaintiffs' service payments were agreed-upon between the parties and negotiated separately from the amounts or compensation paid to the Eligible Members

via the Net Settlement Fund. Ultimately, the approval of Named Plaintiffs' service payments by this Court will not affect, in any way, the amounts or compensation paid to the class members via the Settlement Fund. (Potteiger Decl., ¶ 20.)

### 5. Class Counsel's Requested Attorneys' Fees and Costs Are Reasonable.

Class Counsel will petition this Court for an award of attorneys' fees and costs not to exceed a total amount of $39,501.64 as representative of Class Counsel's actual and reasonable time spent litigating and resolving this matter. Defendant does not oppose this request.

Under the FLSA, successful Plaintiffs or "prevailing parties" are entitled to reimbursement for their attorneys' fees and costs. 29 U.S.C. § 216(b). A "prevailing party" is a plaintiff who obtains a judgment or any other judicially sanctioned relief on the merits of the case. *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 603-04 (2001); *Johnson v. Daley*, 339 F.3d 582, 587 (7th Cir. 2003). In addition to a judgment on the merits, "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." *Buckhannon*, 532 U.S. 598 at 603-04 (citing *Maher v. Gagne*, 448 U.S. 122 (1980)). Ultimately, enforceable judgments on the merits and court-ordered consent decrees create the "material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. 598 at 603-04.

Should this Court grant the parties' Joint Motion for Preliminary Approval of Class Action Settlement, Named Plaintiffs would be considered a prevailing party under the FLSA and entitled to reimbursement of their reasonable attorneys' fees and costs.

Ultimately, the court "must do [its] best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) ("Synthroid I"); *see also*

9

*In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("Synthroid II"); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013); *Steinlauf v. Cont'l Illinois Corp.,* 962 F.2d 566, 572-73 (7th Cir. 1992) (stating, "Class Counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client").

Class Counsel will petition this Court for reimbursement of reasonable attorneys' fees and costs not to exceed a total amount of $39,501.64 as representative of counsel's actual and reasonable time spent litigating and resolving this matter.

Class Counsel's attorneys' fees and costs were agreed-upon between the parties and negotiated separately from the amounts or compensation paid to the Eligible Members via the Net Settlement Fund. (Potteiger Decl., ¶ 20.) Ultimately, the approval of Class Counsel's fees and costs by this Court will not affect, in any way, the amounts or compensation paid to the class members via the Settlement Fund. (*Id.*)

## II. BECAUSE THE PUTATIVE COLLECTIVE CLASS SATISFIES THE STANDARDS REQUIRED BY THE COURTS, THE 29 U.S.C. § 216(B) COLLECTIVE ACTION SHOULD BE FINALLY CERTIFIED.

It is generally accepted that court approval of the settlement of FLSA collective action settlements is necessary to effectuate a valid and enforceable release of the FLSA claims asserted by the Plaintiffs. *See Walton v. United Consumer Club, Inc.,* 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1352). If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.,* 679 F.2d at 1354.

By participating in this collective action through the returning of a Consent Form, Opt-In Plaintiffs took advantage of the efficiencies and economics of the collective action device, which enables workers with low-dollar individual claims to pursue their FLSA rights by pooling resources with similarly-situated workers. *See Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980) ("[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device").

An action under the FLSA may be maintained against "any employer . . . by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." 29. U.S.C. § 216(b). The FLSA does not contain a definition of "similarly situated." To determine if the putative class members are similarly situated to each other, courts look to:

> (1) whether the factual and employment settings of the individual plaintiffs are similar or disparate;
> 
> (2) whether Defendant may assert various defenses that appear to be individual to each plaintiff; and
> 
> (3) whether fairness and procedural considerations support proceeding as a collective action.

*Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-bbc, 2011 WL 2009967, *4 (W.D. Wis. May 23, 2011) quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 811 (N.D. Ill. 2010).

With respect to the FLSA collective, the Second-Amended Complaint alleges the same violation of law – that Defendant failed to include all forms of non-discretionary remuneration in its BDC employees' regular rates of pay for overtime calculation purposes and improperly classified its BDC employees as "exempt" for compensation purposes, depriving said employees of overtime pay for hours worked in excess of forty (40) in a workweek in violation of the FLSA.

11

(*Id.*) For purposes of facilitating settlement only, Defendant has agreed not to dispute that a number of its defenses are similar as to each of the Eligible Members.

Finally, fairness and procedural concerns support moving certifying a collective action. It would better serve the Parties and the Court to resolve the claims of the Eligible Members in one fell swoop rather than litigate 11 individual actions. Moreover, judicial economy is served by so proceeding as a collective action. Final Certification of the Collective Class at this time is appropriate under 29 U.S.C. § 216(b).

## CONCLUSION

For the above stated reasons, the Parties jointly request that the Court accept the Parties' Joint Stipulation to certify the 29 U.S.C. § 216(b) collective class. Further, because the settlement represents a fair and reasonable resolution of the Parties' disputes and because preliminary approval is the preferred method of administering such a settlement, the Parties respectfully request that the Court grant the Joint Motion for Preliminary Approval.

Dated this 21st day of August 2020.

By: **s/ *David M. Potteiger*** 
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
David M. Potteiger, SBN 1067009
Walcheske & Luzi, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Email: jwalcheske@walcheskeluzi.com
Email: sluzi@walcheskeluzi.com
Email: dpotteiger@walcheskeluzi.com

*Attorneys for Plaintiffs*

By:   **s/ *Keith E. Kopplin***           
Keith E. Kopplin, SBN 1044861
Suzanne M. Watson, SBN 1079803
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Pabst Boiler House
1243 N. 10th Street, Suite 200
Milwaukee, WI 53205
Telephone: (414) 239-6400
Email: keith.kopplin@ogletree.com
Email: suzanne.watson@ogletree.com

*Attorneys for Defendant*

43921084.1

13

Case 2:19-cv-01421-JPS   Filed 08/21/20   Page 13 of 13   Document 42